BRYAN SCHRODER
United States Attorney

JACK S. SCHMIDT
Assistant United States Attorney
Federal Building and U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, Alaska 99802
Phone: (907) 796-0400
Fax: (907) 796-0409
E-mail: jack.schmidt@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HERMAN JOSEPH BROWN III, ) <br> ) <br> Defendant. ) <br> ) | No. 1:20-cr-00004-TMB-MMS |

**UNITED STATES' SENTENCING MEMORANDUM**

<u>**SUMMARY OF SENTENCING RECOMMENDATIONS**</u>

**TERM OF IMPRISONMENT** ........................................................................ **108 months**

**SUPERVISED RELEASE** ........................................................................................ **3 years**

**SPECIAL ASSESSMENT** ...................................................................................... **$100.00**

The United States Probation Office (USPO) has prepared a presentence investigation report (PSR) in this case. The United States does not object to the PSR.

I.  BACKGROUND

This case originated from a Ketchikan Police Department (KPD) investigation from a June 7, 2019, report from the local postmaster who was aware of the defendant's prior criminal history and that BROWN III had received numerous packages from firearm stores. BROWN had a prior conviction for Misconduct Involving a Controlled Substance in the Third Degree, a felony in 1KE-17-498CR. The investigation revealed that BROWN III had been receiving parts for an AR15 .223 rifle, Glock style handgun parts, grenade bodies, 80% lowers and uppers for AR15 rifle. Officer also began to receive information that the defendant was in the possession of firearms, sale of marijuana, and reviewed an Instagram account that contained photos of firearms and marijuana and a number of anti-law enforcement links and rhetoric.

On January 24, 2020 KPD contacted at his place of employment in order to execute a search warrant at BROWN III residence and he was found in possession of a Microtech auto knife. BROWN III was taken to his residence in which was located a Polymer 80, Glock 17 clone with 17 rounds of ammunition located on a counter. A search of the residence located a number of suspected bomb making materials. KPD secured and left the scene and contacted the Alcohol, Tobacco, Firearms, and Explosive (ATFE) agents to assist with the search.

The next day ATFE agents assisted with the search and located the following items associated with bomb making, they were: 1) 3 radio frequency kits that contained

transmitters and receivers; 2) 18 gauge speaker wire, 9 volt batteries, and resistors; 3) 3 grenade bodies with fuses; 4) 99 primers; 5) 9 volt connectors, all-purpose cement, a bag of bolts, washers, and nails; 6) hobby fuses, five cardboard tubes with quarters glued on with one end to act as an end cap and three 1 inch PVC tubs additional end caps glued on one end and three additional endcaps with a hole drilled in the middle of the ends; 7) 5 pounds of suspected ANFO and four pounds of black head pyro; 8) 5413H aluminum powder; rocket city chemical – two, one pound tubs of potassium nitrate, one glass jar labeled "AL", one glass jar labeled "FP", one glass jar labeled "COT", and a four pound package of sulfur. The labeled jars contained 495.8 grams of suspected homemade explosives.

In addition to the explosives, officers also recovered a Mossberg 12 gauge shotgun, a fully assembled AR-15 clone with a scope and tactical light, AR clone pieces a lower and upper to include a six inch barrel, 2 - 60 AR drum magazines, 1- 50 round Glock 17 drum magazine, 20 - 5.56/.223 AR magazines, 6 – 7.62 AK magazines, 6 – Glock 17 magazines, 2 – SD .45caliber magazines, 2 - unassembled polymer 80 handguns, an AR barrel, over 2,000 rounds of .223 ammunition, 136 rounds of 9mm ammunition, 115 rounds of .45 caliber ammunition, 117 shotgun shells, 2 radio scanners, Guy Fawkes mask, 265 gross grams of marijuana, 97 gross grams of hash oil dabs, 10.1 grams of psilocybin mushrooms, 141 gross grams of hash oil wax in jars, 1,434 doses of suspected LSD, less than one gram Dimethyltryptamine, and syringes containing suspected hash oil.

The seized explosive parts were sent to the ATFE laboratory, in which they determined that the three improvised pipe bombs and three improvised grenades, were classified as destructive devices that could be readily assembled.

## II. GUIDELINE APPLICATIONS

### A. Base Offense Level

As the PSR correctly reflects, the defendant's a base level is correctly calculated at 22.

### B. Specific Offense Characteristics

The PSR correctly reflect that the defendant is subject to a four level increase pursuant U.S.S.G 2K2.1 for possession of 3 firearms and 6 destructive devices. The PSR accurately reflects a two-level increase in his offense level for involvement of a destructive device pursuant to U.S.S.G 2K2.1(b)(3)(B). Moreover, because the firearms were used in furtherance of the felony offense of Misconduct in the Fourth Degree, the offense level is increased an additional four points, as such BROWN III adjusted offense level is 32. Thus, the total offense level should be 29 with the acceptance of responsibility, which results in a guideline calculation of 108 to 135 months, however, the maximum sentence allowed under the statute is 120 months, so BROWN III actual guideline calculation is 108 to 120 months. The defendant is also subject to a two point variance pursuant to the Cares Act in agreeing to continue with his sentencing via video or other electronic means the government has agreed to recommend a sentence within the new guideline range with the variance applied. As a result, the defendant guideline with

the variance is now reduced to a guideline of 87 to 108 months. The government is recommending the high end of the guideline range.

### C. Criminal History

The defendant has accumulated 6 criminal history points, placing him in category VI. However, there are numerous criminal justice contacts in which the defendant was given a break or minimal sentences. However, for a number of reasons, it clearly appears BROWN III overall criminal history is still under-represented. The D criminal history starts with felony burglaries at the age of 14, graduating to felony theft at the age of 16. During his supervision for the theft BROWN III had multiple violations of supervision for drugs and alcohol. This would be a reoccurring theme in BORWN III future criminal history. At 17, BORWN III was adjudicated for two additional misdemeanor theft charges and supervised until fall of 2010. At the age of 21, BROWN III was convicted of multiple misdemeanor theft charges and as the history of one past is determine to repeat itself, BROWN III did poorly on supervision and what later charged with Att. Misconduct in the Third Degree a little over six months later. A month after that, BROWN III was found in possession of a firearm in his possession, however it was dismissed a little over a year later. In between that time, BROWN was charged with Escape in the Fourth Degree. The facts of that event were disturbing, the defendant was successful in evading arrest when he resisted arrest and fled from police when he claimed he had a bomb on his person and ran to fuel pumps and "acted as if he was going to detonate the device near the gas pumps." This was a reduced charge from an incident of a fear assault charges related to the incident and the law enforcement officers involved.

U.S. v. BROWN III
1:20-cr-00004-TMB-MMS                5

This did not deter BROWN from committing further criminal acts, especially his involvement is drug dealing. In November 2017, at the age of 24, the defendant is again charged with drug distribution and only given a fine of $2,000.00. That brings us to the present day and the federal charges BROWN III now faces which is essentially a reduced charge bargain for a plea to a felon in possession charge, without the potential exposure of explosive charges and drug charges. Based on his past criminal history and history while on supervision, and his age, there is a high likelihood that the defendant will commit other crimes in the future and the government requests that the court take into consideration of these circumstances when it fashions an appropriate sentence for BROWN III based on the 3553 factors. It is clear, based on BROWN's criminal history, he will continue to engage in criminal behavior, including assaultive behavior and that behavior will continue to escalate. The defendant with his explicit anti-police rhetoric about killing police, in conjunction with his possession of a number of firearms and weapons, including explosive devices, there is a strong need for BROWN III to be isolated from society, in order to protect society, from BROWN III propensity to commit continued criminal acts.

### III. APPLICATION OF 18 U.S.C. § 3553(a)

BROWN III conduct surrounding the underlying offense is extremely serious. BROWN III Instagram account glorifying the killing of police, his past interaction of police where he threatened to blow himself up to get away from law enforcement is highly concerning. One may say that BROWN III is harmless because he has not acted on his prior postings and he just has an affinity for firearms and explosives. However, it

U.S. v. BROWN III
1:20-cr-00004-TMB-MMS                                  6

is clear that BROWN III is a highly intelligent person, who has a clear dislike of the police, who was able to acquire 80% lowers for AR15 and Glock 17 clones and able to build two operational firearms and amass a large amount of ammunition for these firearms. Not only that, BROWN III was able to acquire a large amount of explosive material, delivery systems – pipe bomb and grenade bodies, and all of the components to assemble the destructive devices. Moreover, the defendant was also in possession of electronic triggers which shows the defendant's sophistication in which the assembly of the destruction would result in the ability to remotely detonate the devices. Furthermore, the defendant was in possession of a large amount of marijuana, a large amount of hash oil, a large amount hash oil and wax, which requires a dangerous process in the production of these drug products, (butane extraction), psychedelic mushrooms, and a very large amount of hallucinogens, 1,434 doses of LSD and less than one gram of Dimethyltryptamine which is a chemical variant of LSD. The fact that BROWN III still committing drug offenses and has possessed firearms in the past is telling. BROWN III will do what BROWN III will do and will not conform his behavior to be a law abiding person. His past criminal history and history on probation is a clear indication of this. It is clear that BROWN III will continued to commit criminal offenses and potentially use violence against law enforcement, just as demonstrated in his criminal history and the disturbing facts of the case. This coupled with the possession of firearms and explosive devices makes BROWN III especially dangerous to the public and requires his isolation from the public in order to protect the public from BROWN III repeated history to engage in criminal conduct. BROWN III is relatively young and is in no way likely to

U.S. v. BROWN III
1:20-cr-00004-TMB-MMS 7

grow out of this behavior and this is a factor that the court should take into consideration in fashioning an appropriate sentence in this case. Deterrence of the defendant through incarceration which will lead to the protection of the public is the most important factors in sentencing for this defendant. One would expect that an individual who is 27 years old, is likely to change his criminal behavior, however, BROWN III involvement in drugs, guns and explosives is a clear indication his conduct is escalating and moving in a direction that creates a substantial and continued risk to law enforcement and law abiding people in the community of Ketchikan.

BROWN III has an extensive criminal history for a person who is 27 years old, his criminal history began when he was 14 years old and when he reached the age of majority and his criminal conduct has continued to escalate to more and more dangerous conduct. Not only that, BROWN III prior conduct on supervision has been horrible with repeated probation and law violations. BROWN III likelihood of success on supervision is highly unlikely given his age, criminal history, and conduct on probation in the past. Moreover, the defendant's proclivities for anti-police thoughts and outward belief and support for violence against police is very disconcerting. One may argue that BRWON III has not acted on these views, however, BROWN III with his amassing of his illegal possession of firearms and explosives clearly makes him dangerous to law enforcement and to the public at large. BROWN III potential for rehabilitation is highly guarded. BROWN has been in and out of the criminal justice system for his entire adult life and for nearly half of his life and continues to be a danger to the public at large.

In this case, there is a strong need for the court to impose a sentence to reflect the seriousness of the offense, but more so, to protect the public and to promote respect for the law, which BROWN III has a complete and utter disregard for. BROWN III criminal history and conduct on supervision speaks for itself. The Court needs to hold BROWN III accountable and give a sentence that will most importantly deter him and other defendants like him. The sentence must protect the public and the only conceivable way to do that in this case is to incarcerate the defendant for as long as possible. The sentence must also provide just punishment for the offense. It is clear, based on BROWN III extensive criminal history, age, history on probation, violent views against police, the amassing of firearms, ammunition, sophisticated explosive materials that were readily assembled possessed by the defendant, and the large amount of drugs possessed by the defendant after prior convictions for drugs shows that BROWN III will likely never be deterred from committing another criminal offense in the future. BROWN III will continue to commit law violations and grow into an ever-increasing threat to society.

Thus, the most important aspect of the sentencing factors is the protection of the public. BROWN III is a defendant who is unwilling to conform his behavior in order to live within the accepted social norms within our society. BROWN III has failed to learn from his prior contacts with the criminal justice system and it is unlikely that he ever will.

Based on the above, the court based on the court's evaluation of the 18 U.S.C. § 3553 factors give a sentence at the top of his calculated guidelines of 108 months to protect the public from future crimes of the defendant the only way that it can,

incarceration of BROWN III for as long as possible. The United States respectfully requests a sentence of 108 months to be imposed.

## IV. CONCLUSION

The United States requests a sentence of 108 months of imprisonment for the defendant based on the defendant's extensive criminal history, history of supervision, to reflect the seriousness of the offense, to promote respect for the law, to provide a just punishment for the offense, to afford adequate and appropriate deterrence to the criminal conduct, and most importantly to protect the public from further crimes of the defendant. The sentence should be followed by three years of supervised release, $100 in special assessments and forfeiture ordered.

RESPECTFULLY SUBMITTED this 13th day of November, 2020, in Juneau, Alaska.

BRYAN SCHRODER
United States Attorney

*s/ Jack Schmidt*
JACK S. SCHMIDT
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on November 13, 2020
a copy of the foregoing was served electronically on:

Jane Imholte, Esq.

*s/ Jack S. Schmidt*
Office of the U.S. Attorney

U.S. v. BROWN III
1:20-cr-00004-TMB-MMS 10