Jane M. Imholte
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
425 G Street, Suite 800
Anchorage, Alaska 99501
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jane_imholte@fd.org

Counsel for Defendant Herman Joseph Brown, III

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HERMAN JOSEPH BROWN, III,<br><br>Defendant. | Case No. 1:20-cr-00004-TMB-MMS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**TOTAL OFFENSE LEVEL:** ............... 29

**CRIMINAL HISTORY CATEGORY:** ............... III

**USPO RECOMMENDED SENTENCE:** ............... 96 months + 3 years' Supervised Release

**DEFENSE REQUESTED SENTENCE:** ............... 36 Months + 3 years' Supervised Release

## I. INTRODUCTION

Herman Brown, III, by and through his attorney, Assistant Federal Public Defender Jane M. Imholte, urges this Honorable Court to fashion a reasonable sentence pursuant to 18 U.S.C. § 3553(a). Mr. Brown files this sentencing memorandum in support of his specific sentencing request. This memorandum is made pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, and is respectfully

submitted in order to provide information to assist the court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a).

Mr. Brown pleaded to Count 1, Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922 (g)(1), 924 (a)(2) and admitted Criminal Forfeiture Allegation 1 of the Felony Information on August 10, 2020. Thereafter, the court ordered production of a Presentence Investigation Report (PSR) for sentencing. Mr. Brown is scheduled to be sentenced on November 20, 2020, before the Honorable Timothy M. Burgess, United States District Court Judge for the District of Alaska. USPO has prepared and filed a PSR at Docket No. 34.

In the PSR, United States Probation has set the offense level at **29,** with a criminal history category of **III.** The resulting range is 108-120 months. Given the government's offer of a two-level variance as the result of a speedy resolution by video of this matter, the guideline range calculated by USPO is 87-108 months. Probation recommends a **96-month sentence followed by three years of supervised release.**

Mr. Brown withdraws his objection to the guideline calculation in the PSR.

Regardless of the final guidelines calculation of the court, Mr. Brown requests a downward variance and asserts that a sentence of **36 months** followed by three years of supervised release is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a).

//

//

*United States v. Herman Joseph Brown, III*
Case No. 1:20-cr-00004-TMB-MMS                                                                                                          Page 2

Case 1:20-cr-00004-TMB-MMS   Document 37   Filed 11/13/20   Page 2 of 12

**I.     FACTS**

   **A.     Facts related to the offense.**

Authorities were first alerted to Mr. Brown's possession of firearms in June, 2019, when the Ketchikan post-master contacted the local police to inform them that Mr. Brown was receiving packages from various firearms stores. Mr. Brown has previous convictions for Misconduct Involving a Controlled Substance in the Third Degree in 2015 and 2018; these convictions appear to be common knowledge in Ketchikan. Despite these convictions, Mr. Brown was known to openly carry a handgun he had manufactured himself. Subsequent investigation revealed that Mr. Brown was in fact in possession of a 9mm pistol, an AR-15 rifle, a Mossberg 15-gauge shotgun, some 3109 rounds of ammunition of various caliber, as well as the materials to assemble three improvised explosive pipe bombs and three improvised explosive grenades. In addition to the firearms and ammunition, police also seized marijuana and psilocybin mushrooms, for which Mr. Brown is facing a charge of Misconduct Involving a Controlled Substance in the Fourth Degree in Alaska Superior Court.

   As a result of the above investigation, Mr. Brown was arrested without incident on January 24, 2020, at his place of employment, the Alaska and Proud Liquor Store. He has remained in custody since that date.

   **B.     Facts about the legal status of Marijuana and other drugs in America today.**

   After the November 2020 national election, one in three Americans lives in a state where recreational marijuana is legal. [1] In Oregon, voters approved—by a 17% margin—

---

[1] "1 in 3 Americans now lives in a state where recreational marijuana is legal," Fertig, Natalie and Zhang, Mona, https://www.politico.com/news/2020/11/04/1-in-3-americans-lives-where-recreational-marijuana-

*United States v. Herman Joseph Brown, III*
Case No. 1:20-cr-00004-TMB-MMS                                                                                    Page 3

Case 1:20-cr-00004-TMB-MMS   Document 37   Filed 11/13/20   Page 3 of 12

Measure 110, which authorizes the use of Psilocybin for mental health treatment at licensed centers,[2] and decriminalizes the personal possession of all "hard" drugs, including cocaine, heroin, Oxycodone and methamphetamine.[3] Washington, D.C. also voted to decriminalize the possession of Psilocybin, joining Denver, CO, Ann Arbor, MI, and Oakland and Santa Cruz, CA in the list of cities who have likewise decriminalized same. In short, attitudes and mores about the criminalization of drugs are rapidly changing. As the call to decriminalize marijuana and ultimately to end the county's failed War on Drugs continues to gain mainstream and widespread support, so too does the examination of predicate offenses for collateral consequences, such as the prohibition on possession of firearms. Unfortunately, any change appears a long way off in federal court.

//

//

//

//

//

//

//

//

//

---

legal-434004/ Nov. 4, 2020.

[2]

[3] See: https://www.opb.org/election2020/, and https://www.opb.org/article/2020/11/04/oregon-measure-110-decriminalize-drugs/.

*United States v. Herman Joseph Brown, III*
Case No. 1:20-cr-00004-TMB-MMS                                                                                             Page 4

### C. Facts about Herman Brown.



Herman Brown is a non-violent millennial who, until now, had no appreciation that his careless internet postings and choice of hashtags could so alarm public safety that he would be perceived as an actual threat to *anyone*, let alone law enforcement. Prior to the instant case, he was also stubbornly opposed to the prohibition on possession of firearms by non-violent

*United States v. Herman Joseph Brown, III*
Case No. 1:20-cr-00004-TMB-MMS Page 5

felons. The people who know Herman Brown best, however, describe him as a gentle soul, devoted to his family and friends, and someone who would not "hurt a fly." See Exhibit D-1 (Letters in support of Herman Brown). The picture that emerges from these letters is one of an Alaska Native man who is bright, quirky, and, while outside of the mainstream, entirely harmless. The lack of any violent prior offenses only serves to underscore this.

Mr. Brown first moved to Alaska with his mother after his parents' divorce. He quickly embraced his Native Alaskan heritage and immersed himself in hunting and fishing and other traditional activities. Like the majority of Alaskans, he has safely and—until prohibited by federal and state law—responsibly owned and operated firearms. Also like many Alaskans, he has used marijuana and has twice possessed it in felony amounts. They are the only predicates to the instant offense.

While incarcerated, Mr. Brown has obtained BasicPlus first aid training, and has successfully completed Reentry and Parenting Programs. See Exhibit D-2, pp.5-7. Also during his incarceration, Mr. Brown became a father for the first time.

Mr. Brown has no violent offenses in his criminal history. At the time of this offense, Mr. Brown harbored only distrust of the government and police, not hatred. He had the not-uncommon misfortune of having taken his internet postings and hashtags too lightly, and thus he has been perceived as more of a threat than he actually poses. It may also be fairly said that he treated the prohibition on firearms too lightly as well. When one considers that Mr. Brown openly carried a gun around a small community that knew he was a felon, it is abundantly clear that he gravely underestimated the potential penalty for doing so. However, that same

community knows him better than this court, the government, or the undersigned, and they have implored the court for mercy on Mr. Brown's behalf.

As he tells the court in his attached letter, Mr. Brown has learned a painful lesson: the prohibition on firearms for him is real; and flauting that prohibition will result in serious consequences. He only intended to have firearms and explosives for hunting, personal protection, and recreation. He is now all-too aware of his prohibition and intends to steer far away from guns in the future. Mr. Brown has also contemplated the real-world implications of careless internet postings and hashtags. Like many people of his generation who have grown up on the internet, Mr. Brown treated his social media postings lightly, as if they existed in an alternate reality. These postings, however, are evidence only of his youth and naivete, not any criminal intent.

Mr. Brown is committed to abiding by whatever terms and conditions the court orders as part of his sentence and will follow through with all conditions including a substance abuse assessment and maintaining steady employment. To that end, Mr. Brown asks for a sentence of no more than 36 months in custody followed by a term of supervised release.

### D. Proper Sentence Under 18 U.S.C. § 3553(a)

The overarching sentencing instruction from the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005) was "a directive to 'impose a sentence that is sufficient but not greater than necessary' to achieve the sentencing goals in 18 USC § 3553(a)." Extended discussion of the post-*Booker* changes to sentencing is unnecessary given this court's familiarity with *Rita v. United Sates*, 551 U.S. 338. 358 (2007) (sentencing court should not presume advisory guideline range is reasonable); *Kimbrough v. United States*, 128 S.Ct. 558,

564 (2007) (same); *Nelson v. United States*, 129 S.C. 890,892 (2009) (per curiam)(same). Today, the Court is fully permitted, indeed obligated, to now focus on individualized sentencing and not on "guidelines sentencing." *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008). So, while the court must properly calculate the guideline range and may logically begin its analysis with a discussion of the guidelines, they are *only one* of the factors to be considered in determining the sentence. *Booker,* at 764-65 (emphasis added). The court is free to deviate from the guidelines so long as the ultimate sentence imposed is otherwise reasonable. *United States v. Menyweather*, 431 F. 3d 692 (9th Cir. 2005).

Here, the relevant § 3553(a) factors warrant a sentence of no more than three years custody. First, Mr. Brown's personal history and characteristics are set out in the PSR and in the letters and exhibits before the court. He is a loving son, friend, and, now, a father. He has a solid work history and a strong native cultural background. He has goals and aspirations for the future that include improving his educational and vocational skills, and returning to stable career-type employment in order to allow him to support his child and family.

The nature of the offense is fully described in the PSR. Mr. Brown did not use any gun in any fashion. No person was harmed or threatened during his possession. He has no history of misconduct or assaults with firearms. Similarly, he was not in actual possession of a firearm when contacted by law enforcement. He was, however, cooperative with them at the time of his arrest. In relationship to the spectrum of illegal firearm possession cases, Mr. Brown's conduct is certainly more mitigated than aggravating, and in no way justifies a sentence at or near the statutory maximum as the guidelines suggest, and as probation recommends.

Providing a sentence of 36 months in custody followed by three years of supervised release puts Mr. Brown under the control and supervision of federal authorities for the next five years of his life. A sentence of this nature is sufficient to reflect the seriousness of the crime, provide just punishment, afford adequate deterrence, and protect the public. This will keep Mr. Brown under direct supervision and monitoring for years and will most importantly provide him the structure and help he needs to accomplish his goals as described herein. It will also permit further sanction and additional substantial custody time as a penalty if he fails to follow the conditions set by the court. Having him sit idly by in custody for an excessive number of years with limited programming and work, and without any ability to support his family, does nothing to further any § 3553(a) goal except provide punishment which is only one of several factors the court must account for in determining a sentence. Mr. Brown needs no further deterrent to abide by the prohibition on firearms. This charge alone has been a jolt and much-needed dose of reality for him.

Next, rehabilitation and treatment needs are relevant considerations for the court when evaluating a defendant's needs under § 3553(a). When considering the need to provide Mr. Brown with educational and vocational opportunities under 18 U.S.C. § 3553(a)(2)(D), the Court must be mindful of 18 U.S.C. § 3582, which indicates that "imprisonment is not an appropriate means of promoting correction and rehabilitation." Mr. Brown's identifiable needs include educational and vocational services. A lengthy period of imprisonment would be contrary to §3582 and is completely contrary Mr. Brown's needs here.

Likewise, 28 U.S.C. § 994(k) specifically directs that the Federal Sentencing Commission, "shall insure that the guidelines reflect the inappropriateness of imposing a

sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." In passing this statute, Congress wanted to be sure that no defendant was locked up in order to put him in a place where it was hoped that rehabilitation would occur. See, *Mistretta v. United States*, 488 U.S. 361, 367 (1989) (The Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation . . .") (Emphasis added).

Given the Supreme Court's decisions in *Booker* and *Gall,* the kinds of sentences available to the court are limited by only the statutory and supervision maximums. The court is not bound by any statutory minimum sentence. The court has the ability, pursuant to § 3553(a), to provide any sentence the court deems appropriate that combines incarceration, supervision, community correction, treatment, etc.

The law does not permit the court to start with a guideline presumption or belief that a guideline range sentence is appropriate in any respect and then review the circumstances thereafter to see if something warrants a different sentence. The guidelines are but one factor of many that must guide the court in determining a reasonable sentence. The guidelines carry no special weight and, indeed, the court can find that a sentence outside the guideline range is appropriate because "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations," or "the case warrants a different sentence regardless." *Rita*, 551 U.S. at 351 (emphasis supplied).

Mr. Brown's advisory guideline range grossly over-values the harm of his crime. Mr. Brown recognizes that the court is obligated to first determine the advisory guideline range. However, this requirement is designed only to address disputes about the guideline facts and

the guideline issues at the outset. A sentence of three years will certainly provide both specific and general deterrence. That period, coupled with another three years of strict supervision will protect the community as well.

Next, a sentence as requested above would not create any unwarranted sentence disparity in this case versus other firearm possession cases. Depending on the circumstances surrounding the possession or use of the firearm and the particular history of the defendant, sentences in similar cases range from periods of just months in custody all the way up to the statutory maximum. Thus, a sentence of three years that properly accounts for the mitigating specific circumstances of the precise possession conduct in this case, places Mr. Brown within the expected range of punishment for the offense and would not create disparity from other factually similar cases.

Finally, restitution is not an issue for the court in this case and should not impact the analysis in any way that supports a guideline sentence at the statutory maximum.

## II.　　CONCLUSION

Herman Brown accepts responsibility for possessing a firearm. His actions were foolish, damaging to his family and criminal. The behavior resulted in serious consequences to him and his family although no others were threatened or harmed by what he did. Given the particular facts of this case, a sentence near the statutory maximum as the guidelines suggest is excessive and unnecessary. Without a firearms-related criminal history, and receiving a conviction for a non-violent offense, a sentence of three years in prison followed by three years supervision is the minimum sentence necessary to meet the objectives of §

3553(a). The ultimate goal accomplished by the requested sentence is to allow Mr. Brown to return to being supportive to his family and a contributing member of his community.

We follow the law as it is today, not what we wish it to be. Mr. Brown respects this now. Where once he felt that there is no legitimate reason for a non-violent felon to be prohibited from possessing a firearm, he now knows that the most legitimate reason of all for honoring this prohibition is very simple: he will be punished. Greater still, he respects the law as it is now, and not what he wishes it to be. There may come a time when the law might catch up with changing mores about drug convictions, but until then Mr. Brown has vividly learned that one faults the law at his peril. The government has Mr. Brown's attention. It is Mr. Brown's goal, once he has completed his sentence, not to have theirs again.

DATED at Anchorage, Alaska this 13th day of November, 2020.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

*/s/ Jane M. Imholte*
Jane M. Imholte
Assistant Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on November 13, 2020. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Jane M. Imholte*